BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(California Bar No. 314898, pro hac vice)
J. RAE LOVKO
(California Bar No. 208855, pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

WILD HORSE EDUCATION, and LAURA LEIGH, individually, and on behalf of WILD HORSE EDUCATION, TAMMI ADAMS, individually and on behalf of WILD HORSE EDUCATION, and REWILDING AMERICA NOW, a non-profit corporation,

*Plaintiffs,*

v.

U.S. DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, BILL GROFFY, Principal Deputy Director and Acting Director of the Bureau of Land Management, and JON RABY, Nevada State Director of the Bureau of Land Management,

*Defendants.*

Case No. 3:25-cv-00577-ART-CSD

**DECLARATION OF TAMMI ADAMS IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

I, Tammi Adams, hereby declare and state:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I am a U.S. citizen residing in the State of Minnesota.

3. I made my professional career as a consulting Environmental Engineer and devoted most of my career to providing Environmental Assessments and Human Health and Ecological Risk Assessment on industrial, public, and private properties, including one of the largest mining CERCLA sites in the country. I also provided sampling, analyses, and planning for the reclamation/restoration of public and private lands from unregulated, regulated, and abandoned mining and industrial sites in accordance with and following strict federal and state environmental laws.

4. I have owned horses since 1970. I have a lifelong, deep, and long-standing interest in wild horses and burros and have been documenting and enjoying them on public lands since 1992.

5. I am a volunteer, member, and the National Environmental Policy Act (NEPA) Program Coordinator of Wild Horse Education (WHE). I began volunteering exclusively with WHE in 2020 and became the NEPA Program Coordinator in support of WHE's mission to protect wild horses and burros and the public lands designated principally for their use.

6. WHE is a non-profit organization that is devoted to protecting America's wild horses from inhumane treatment and to preserving the herds on public lands for future generations.

7. Advocating for the wild horses and burros in the Pancake Complex and for responsible public land management is a past, present, and future important issue for myself and WHE.

8. Each year, I visit wild horse and burro herds throughout the western United

States, including in Nevada. As a volunteer, member, and the NEPA Program Coordinator for WHE, I have observed and documented wild horses and burros throughout the western United States, including in Nevada.

9. I have visited wild horses and burros in the Pancake Complex on multiple occasions over the years, most recently in 2026. I have plans to visit the wild horses and burros in the Pancake Complex yet again this year in Spring and into the future.

10. I have recreational, aesthetic, and conservational interests in the Pancake Complex rangeland and the wild horses and burros that live there. I receive great recreational, aesthetic, and conservation enjoyment from observing, attempting to observe, hearing, seeing evidence of, and studying these animals and all wildlife. The opportunity to possibly view wild horses and burros in the Pancake Complex is of significant interest and value to me and intensifies my enjoyment of Nevada's public lands.

11. I care deeply for wild horses and burros, and because of my visits to the Pancake herd management area, I have developed a strong bond with the wild horses and burros there.

12. On June 13, 2024, BLM initiated public scoping for the "Pancake Complex Herd Management Area Plan." With this announcement, the agency provided a "Management Evaluation Report." WHE provided substantive scoping comments through its attorneys on July 15, 2024. *See* PAN_04171-04182.

13. On October 30, 2024, BLM released a Preliminary Environmental Assessment (PEA) for the Pancake Complex Wild Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA).

14. On November 27, 2024, together with Laura Leigh, the current president of WHE, I submitted comments on behalf of WHE regarding the PEA. These facts independently satisfy the same standard applied to Ms. Leigh. *See Sierra Club v. Morton,* 405 U.S. 727, 734-35 (1972). PAN_06353-06383. These comments included 15 substantive points, including that (1)

BLM must undertake a full EIS-level analysis, not just an EA; (2) Jake's Walsh must be included in the HMAP; (3) AMLs must be evaluated/revised through landscape-level analysis within the HMAP itself; (4) Fire fuels as an impact must be considered, and that the wild horses' beneficial impact on cheatgrass/fire fuels versus livestock is unsupported by BLM's data; (5) foaling season needs site-specific evaluation; (6) population growth suppression should be analyzed site-specifically; (7) BLM must define "excess" specific to the Pancake Complex; (8) gather methods need site-specific analysis; (9) BLM must provide range data proving past removals actually achieved TNEB; (10) monitoring plan data must be disclosed specifically for wild horses; (11)-(15) mitigation, critical habitat/seasonal movement, cumulative impacts, sage grouse amendments, and economic/tourism impacts must be considered. *See id.*

15. On November 27, 2024, WHE also provided comments through its attorneys together with Rewilding America Now. *See* PAN_6087-6105. In summary, these submitted comments identified that the PEA (1) improperly conflated two independent actions - adoption of an HMAP and adoption of a gather plan; (2) produced an HMAP inconsistent with BLM's own policies; (3) relied on an HMAP and EA unsubstantiated by current data; (4) failed to identify the issues necessary to guide the HMAP's scope; (5) failed to consider reasonable alternatives; (6) failed to provide meaningful public participation; and (7) failed to comply with *Leigh v. Raby*'s order requiring reanalysis of the Gather Plan alternatives' foreseeable wildfire-risk effects. We further noted the PEA failed to address the majority of Plaintiffs' scoping comments. PAN_06087-06105.

16. On March 4, 2025, BLM issued a Decision Record for the Pancake Complex Wild Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA), resulting in the adoption of a plan that purported to implement an HMAP and gather plan.

17. BLM and USFS have already eradicated most of the wild horses and burros on Nevada public lands, and they are working hard to eradicate the remaining wild horses and

burros throughout the west. This eradication is occurring in violation of NEPA, the Federal Land Policy and Management Act of 1976, and 1971 Wild Free-Roaming Horses and Burros Act (WHA). This eradication continues with BLM's March 4, 2025, Decision Record for the PEA for the Pancake Complex Wild Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA). *See* PAN_06451-06455.

18. BLM's adoption of the HMAP/EA-FONSI through the March 4, 2025, Decision Record has caused or is substantially likely to cause injury to my legally cognizable interests in protecting wild horses and burros from inhumane treatment, as well as my aesthetic, recreational, and conservational interests in the Pancake Complex and its wild horses and burros.

19. My injury and WHE's injury is also procedural. We submitted substantive comments during scoping and on the Preliminary EA raising specific, material concerns — including the adequacy of BLM's AML determinations, the necessity of removal, and the omission of the Court-ordered wildfire reanalysis. I and WHE implored BLM to create an HMAP that addresses BLM's management obligations in a comprehensive fashion, minimizing inefficiencies and costs while maximizing wild horse and rangeland health. BLM thwarted our attempts to participate by ignoring most of our comments and did not reasonably respond to these comments, as NEPA requires. This failure impaired my ability and WHE's ability to meaningfully participate in a decision-making process NEPA guarantees us a role in, independently establishing injury in fact.

20. On April 3, 2025, together with WHE, Laura Leigh, and Rewilding America Now, I timely appealed Defendant's approval of the Gather EA to the United States Interior Board of Land Appeals and on May 1, 2025, petitioned for an order staying the decision.

21. BLM's Decision was issued in violation of NEPA and the WHA, and it does not provide for the comprehensive site-specific management of wild horses and burros prescribed by the 1971 Act and BLM's own internal guidance. Instead, it focuses on permanent removals and

population control/sterilization at great cost to wild horses and burros, as well as rangeland health and me.

22. On June 6, 2025, The United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals (IBLA) issued an Order to Show Cause. DOI-BLM-NV-L060-2024-0005-EA. The IBLA stated in its Order to Show Cause, that there was "no evidence Appellants filed their notice of appeal with the Bristlecone and Tonopah Field Offices[,]" and as such, ordered WHE and other appellants to show cause as to why the appeal should not be dismissed for lack of jurisdiction. *Id*. In the same Order to Show Cause, BLM's answer deadline was vacated. *Id*.

23. On June 13, 2025, together with other IBLA appellants and on behalf of WHE, I timely responded to the Court's June 6, 2025, Order to Show Cause. IBLA No. IBLA 2025-0202. DOI-BLM-NV-L060-0013-EA. We contended that our submission of the Notice of Appeal through the new Bison File and Serve (BFS) constituted timely filing. We requested relief through Federal Rule of Civil Procedure 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect if it could not be seen as timely. Finally, we asked the Court to not dismiss our appeal.

24. On July 2, 2026, the IBLA dismissed our appeal and denied our petition to stay, citing a lack of jurisdiction to rule on it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of September 2026.

*/s/ Tammi Adams*
Tammi Adams