BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(California Bar No. 314898, pro hac vice)
J. RAE LOVKO
(California Bar No. 208855, pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILD HORSE EDUCATION, and LAURA LEIGH, individually, and on behalf of WILD HORSE EDUCATION, TAMMI ADAMS, individually and on behalf of WILD HORSE EDUCATION, and REWILDING AMERICA NOW, a non-profit corporation,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, BILL GROFFY, Principal Deputy Director and Acting Director of the Bureau of Land Management, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>*Defendants.* | Case No. 3:25-cv-00577-ART-CSD<br><br>**DECLARATION OF LAURA LEIGH IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

I, LAURA LEIGH, hereby declare and state:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify competently thereto under oath.

2. I am a U.S. Citizen residing in the State of Nevada.

3. I am the President and Founder of WILD HORSE EDUCATION (WHE), which has its principal place of business at 216 Lemmon Drive, #316 Reno, NV, 89506. In addition, I am an active member and supporter of WHE.

4. WHE is a national non-profit corporation created in 2011 that is dedicated to research, journalism, and public education concerning the activities and operations of federal and state management of the free roaming horse and wild burro populations. WHE has more than 300,000 members and followers, with the majority of that number including individuals across the United States. WHE educates and informs these members and the American public about wild horses and burros through articles, photographs, videos, and sharing data and other information. WHE's members and supporters regularly attend and observe wild horse and burro roundups, removals, and holding pens.

5. The mission of WHE is to protect and preserve wild horses and burros on range, during and after capture. WHE accomplishes this through public education, commenting on the Bureau of Land Management's (BLM) proposed actions impacting management of wild horses and burros, advocating for the creation of a sane, scientifically-based management strategy for these animals in the wild, and promoting and supporting public adoptions of formerly wild horses. Since its founding, WHE has advocated for enforceable welfare rules for management from range, through capture, and into holding.

6. WHE frequently submits comments during the National Environmental Policy Act (NEPA) process on BLM proposed plans, including but not limited to Environmental Assessments (EAs). WHE has participated at hearings made available for public comment on

BLM proposed plans, too.

7. WHE has an interest in ensuring that wild free-roaming horses are treated as integral part of public lands, management activities are conducted at the minimal level feasible, and that management activities include development and consideration of land use plans and herd area management plans.

8. It is WHE's standard practice to send trained members of WHE to observe wild horse and burro gathers conducted by BLM throughout the United States. When observing gather operations, our members document the events by filming the operations on video, capturing photographs, and writing written reports from the area designated by BLM for public observers. It is also WHE's standard practice to make documentation of the wild horse and burro gathers and range data available to the public and to use this documentation to show and support any concerns we have directly to the BLM.

9. Advocating for the wild horses and burros in the Pancake Complex is an important past, present, and future issue for myself and WHE, including WHE's members and supporters. They have aesthetic, recreational, and conservation interests in the wild horses of this HMA.

10. WHE has held board meetings and outreach sessions in the Pancake Complex.

11. Over the past 17 years, I have visited, viewed, observed, and documented wild horses and burros in the Pancake Complex on numerous occasions, with my last visit in 2026. Based on my visits over the past 17 years, I have formed strong bonds with the wild horses in the Pancake Complex. Many of WHE's members and supporters have similarly engaged the horses in the Pancake Complex. As a result, we have formed strong bonds with the wild horses in the Pancake Complex. We intend to continue attending, observing, and documenting wild horses in the Pancake Complex this year and into the foreseeable future.

12. I have documented and recorded the foaling season at the Pancake Complex for

over ten years. Foaling season in the Pancake Complex is earlier than most other populations, and truly begins by the third week of January. I experience incredible joy from watching young foals born in the Pancake Complex become curious and strong adults who then create their own families.

13. I intend to continue my visits in 2026 and into the foreseeable future.

14. When I and WHE members and supporters visit the Pancake Complex, we derive great pleasure from being in the natural environment of the public lands and observing wild horses and wildlife in the Pancake Complex. In addition, we document the wild horses to promote WHE's mission of educating the public and advocating for sane management.

15. WHE members and supporters have attended and observed past wild horse roundups, removals, and holding pens in the Pancake Complex, including at gathers conducted in 2022, 2025 and 2026. In 2026, BLM did a bait trap and no public was allowed at trap or even permitted to view the temporary corrals prior to shipping.

16. Because of the strong bond that I and other WHE members and supporters have with the wild horses at Pancake Complex, it is often very emotional to observe them being gathered, captured, and removed from their homes in the Complex. We experience great sadness in anticipation of these gathers, during, and after observing the horses we have visited, observed, enjoyed, and known in the past be rounded up and lose their freedom. It is also extremely difficult to witness gathers in which the horses and burros are injured or in distress, or in which horses are euthanized during the gather operation. This is especially true when the horse or burro is known to us from the time we have spent visiting, viewing, or enjoying them in the wild.

17. During the past gathers in the Pancake Complex, I have seen horses in distress, suffer server injury, and even die as a result of BLM not ensuring humane handling procedures.

18. I, along with other WHE members and supporters, have suffered great emotional harm and distress from viewing such mistreatment of wild horses in the Complex.

19. I have grave concerns that past, present, and future BLM actions regarding wild horses and burros in the Pancake Complex will adversely affect my ability to recreate and enjoy, such as through visiting, observing, and photographing, the wild horses of these herds in the future.

20. The further gathering and removal of wild horses and burros in the Pancake Complex due to the challenged actions will adversely affect the substantial recreational, aesthetic, and conservational interests of myself and other WHE members and supporters. WHE has been forced to divert resources towards bringing public awareness to BLM's mismanagement and missteps. Had WHE not been forced to divert its staff's attention and time, WHE would have been able to use those resources in its research, education, and advocacy mission.

21. I consider the wild horses and burros in the Pancake Complex to be my companions and family due to the years I have spent living on these ranges and visiting the Complex.

22. I continue to mourn the loss of thousands of wild horses removed from the Pancake Complex in the past. I will be unable to recreate among these horses or enjoy them through observation and photography. I worry that important genetic lineages have been damaged or lost, especially the Medicine Hats, and I will be unable to enjoy the beauty of the unique appearance of these rare wild horses in the future as a result of BLM's March 4, 2025, adoption of the gather plan within the Pancake Complex document, Herd Management Area Plan(HMAP)/EA-Finding of No Significant Impact (FONSI).

23. I, and other WHE members and supporters, frequently submit comments on HMAPs, EAs, and other wild horse management documents and hearings.

24. I often implored the BLM specialist for the Pancake Complex, when I saw him, to create an HMAP. Repeatedly, for over a decade, BLM would reply that they would not create an

HMAP until after the low AML was reached.

25. On November 23, 2020, on behalf of myself and WHE, I provided public comments on the Pancake Complex EA, DOI-BLM-NV-L060-2021-0005-EA. *See* PAN-3382-3386. Among other critical deficiencies in the document purporting to be an EA, I specifically stated that BLM's failure to craft an HMAP before a "comment period on a gather EA" infringed my rights.

26. On May 4, 2021, BLM issued a Decision Record, adopting a gather plan for the Pancake Complex. Several plaintiffs, including WHE, filed a lawsuit to challenge BLM's decision to adopt a gather plan for the Pancake Complex. After the parties filed cross-motions for summary judgment, Judge Miranda Du issued an order finding BLM had unduly delayed crafting a Herd Management Area Plan (HMAP) for the Complex. She ordered BLM to prepare and approve an HMAP by March 28, 2025. *See Leigh v. Raby*, 726 F. Supp. 3d 1207, 1215 (D. Nev. 2024). Judge Du also vacated and remanded the Decision Record (along with the associated FONSI and EA) for the Pancake Complex gather plan "for the agency to reanalyze the foreseeable effects of the Gather Plan alternatives on wildfire risks in the Pancake Complex and reach a conclusion as to their significance." *Id.*

27. On June 13, 2024, BLM initiated public scoping for the "Pancake Complex Herd Management Area Plan." With this announcement, the agency provided a "Management Evaluation Report." WHE provided substantive scoping comments through its attorneys on July 15, 2024. *See* PAN_04171-04182.

28. On October 30, 2024, BLM released a Preliminary Environmental Assessment (PEA) for the Pancake Complex Wild Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA).

29. On November 27, 2024, together with Tammi Adams, I submitted comments on behalf of WHE regarding the PEA. PAN_06353-06383. These comments included 15

substantive points, including that (1) BLM must undertake a full EIS-level analysis, not just an EA; (2) Jake's Walsh must be included in the HMAP; (3) AMLs must be evaluated/revised through landscape-level analysis within the HMAP itself; (4) Fire fuels as an impact must be considered, and that the wild horses' beneficial impact on cheatgrass/fire fuels versus livestock is unsupported by BLM's data; (5) foaling season needs site-specific evaluation; (6) population growth suppression should be analyzed site-specifically; (7) BLM must define "excess" specific to the Pancake Complex; (8) gather methods need site-specific analysis; (9) BLM must provide range data proving past removals actually achieved TNEB; (10) monitoring plan data must be disclosed specifically for wild horses; (11)- (15) mitigation, critical habitat/seasonal movement, cumulative impacts, sage grouse amendments, and economic/tourism impacts must be considered. *See id.*

30. On November 27, 2024, WHE also provided comments through its attorneys together with Rewilding America Now. *See* PAN_6087-6105. In summary, these submitted comments identified that the PEA (1) improperly conflated two independent actions - adoption of an HMAP and adoption of a gather plan; (2) produced an HMAP inconsistent with BLM's own policies; (3) relied on an HMAP and EA unsubstantiated by current data; (4) failed to identify the issues necessary to guide the HMAP's scope; (5) failed to consider reasonable alternatives; (6) failed to provide meaningful public participation; and (7) failed to comply with *Leigh v. Raby*'s order requiring reanalysis of the Gather Plan alternatives' foreseeable wildfire-risk effects. We further noted the PEA failed to address the majority of Plaintiffs' scoping comments. PAN_06087-06105.

31. On March 4, 2025, BLM issued a Decision Record for the Pancake Complex Wild Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA), resulting in the adoption of a plan that purposed to implement an HMAP and gather plan.

32. BLM's Decision Record, HMAP/EA- FONSI for the Pancake Complex Wild

Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA) violate the Wild Horse Act, the Federal Land Policy and Management Act of 1976, and NEPA. Such violation has caused or is substantially likely to cause injury to legally cognizable interests of WHE, WHE members, and myself. These include interests in the humane treatment and survival of the wild horses and burros in the Complex; BLM's management of these animals in compliance with its obligations under NEPA, the Wild Horse Act, and BLM's own internal guidance; and the aesthetic, recreational, and conservational interests of WHE and its members in the Pancake Complex and its wild horses and burros.

33. My injury and WHE's injury is also procedural. We submitted substantive comments during scoping and on the Preliminary EA raising specific, material concerns — including the adequacy of BLM's AML determinations, the necessity of removal, and the omission of the Court-ordered wildfire reanalysis. BLM did not reasonably respond to these comments, as NEPA requires. This failure impaired my ability and WHE's ability to meaningfully participate in a decision-making process NEPA guarantees us a role in, independently establishing injury in fact.

34. On April 3, 2025, together with WHE, Tammi Adams, and Rewilding America Now, I timely appealed Defendant's approval of the Gather EA to the United States Interior Board of Land Appeals and on May 1, 2025, petitioned for an order staying the decision.

35. On June 6, 2025, The United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals (IBLA) issued an Order to Show Cause. DOI-BLM-NV-L060-2024-0005-EA. The IBLA stated in its Order to Show Cause, that there was "no evidence Appellants filed their notice of appeal with the Bristlecone and Tonopah Field Offices[,]" and as such, ordered WHE and other appellants to show cause as to why the appeal should not be dismissed for lack of jurisdiction. *Id*. In the same Order, BLM's answer deadline was vacated. *Id*.

36. On June 13, 2025, together with other IBLA appellants and on behalf of WHE, I timely responded to the Court's June 6, 2025, Order to Show Cause. IBLA No. IBLA 2025-0202. DOI-BLM-NV-L060-0013-EA. We contended that our submission of the Notice of Appeal through the new Bison File and Serve (BFS) constituted timely filing. We requested relief through Federal Rule of Civil Procedure 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect if it could not be seen as timely. Finally, we asked the Court to not dismiss our appeal.

37. On July 2, 2026, the IBLA dismissed our appeal and denied our petition to stay, citing a lack of jurisdiction to rule on it.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 22nd of September 2026,

LAURA LEIGH