BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(California Bar No. 314898, pro hac vice)
J. RAE LOVKO
(California Bar No. 208855, pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILD HORSE EDUCATION, and LAURA LEIGH, individually, and on behalf of WILD HORSE EDUCATION, TAMMI ADAMS, individually and on behalf of WILD HORSE EDUCATION, and REWILDING AMERICA NOW, a non-profit corporation,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, BILL GROFFY, Principal Deputy Director and Acting Director of the Bureau of Land Management, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>*Defendants.* | Case No. 3:25-cv-00577-ART-CSD<br><br>**DECLARATION OF MANDA KALIMIAN IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

I, Manda Kalimian, hereby declare and state:

1. The facts contained in this declaration are known personally to me and, if called as a witness, I could and would testify thereto under oath.

2. I am a resident of New York.

3. I am the CEO and founder of the non-profit organization, Rewilding America Now (RAN), which has its principal place of business at 6150 Norther Boulevard, East Norwich, N.Y., 11732. I have been authorized to make this declaration on behalf of RAN.

4. RAN's mission is to conserve and restore the North American landscape by creating sustainable environmental ecosystems through restoring and preserving biodiversity and native species (also known as "rewilding"); in particular, RAN's focus is on the reintroduction and continuing survival of wild horses as a keystone species within their ecosystems. RAN believes that reintroducing and sustaining wild horses in their historic habitats can improve the overall health and vitality of North American grasslands. To achieve this mission, RAN implements initiatives to foster community empowerment, land conservation, and the sustainable management and preservation of America's wild horse populations.

5. Another major component of RAN's mission is the advancement of the scientific study of wild horses through genetics and environmental DNA. RAN has funded two groundbreaking environmental DNA (eDNA) research papers from McMaster University. Specifically, eDNA extracted from soil samples has suggested that mammoths and Yukon wild horses survived thousands of years longer than science previously believed. RAN also has funded scientific research whose results suggests that the wild horses of the United States ought to be considered native species, rather than non-native species that were introduced by the Spanish conquistadors.

6. The Wild Free-Roaming Horses and Burros Act (Wild Horse Act) recognizes wild horses as a native species that is an "integral component of the Natural System." 16 U.S.C.

§ 1331. In truth, wild horses are recognized to play a crucial role in shaping natural habitats and are a key rewilding engineer. They protect and help to rebuild environmental systems and allows other native species to thrive—all working to keep nature in balance.

7. The Pancake Complex contains one of the wild horse herds that RAN monitors and advocates for.

8. RAN aided in the rescue of three "Medicine Hat" wild horses, horses with specific markings on their heads, believed by Native tribes to have magical or mystical protective abilities, from the 2022 Pancake Complex gather. These horses were reunited as family in North Dakota.

9. RAN actively monitors for any Herd Management Area Plans (HMAPs) that are available for public comment in the United States and routinely submits comments throughout the public commenting process.

10. On May 4, 2021, BLM issued a Decision Record, adopting a gather plan for the Pancake Complex, which several plaintiffs - including RAN (f/k/a CANA Foundation) - challenged in court. In part, we claimed that BLM has a mandatory duty to create an HMAP for the Pancake Complex; we also claimed that BLM had violated NEPA.

11. Judge Miranda Du with the U.S. District Court of Nevada issued an order, agreeing that BLM has a mandatory duty to create an HMAP for the Pancake Complex. *See Leigh v. Raby*, 726 F. Supp. 3d 1207, 1215 (D. Nev. 2024). BLM was ordered to prepare and approve an HMAP for the Complex by March 28, 2025. Judge Du also vacated and remanded the Decision Record (along with the associated Finding of No Significant Impact and EA) for the Pancake Complex gather plan "for the agency to reanalyze the foreseeable effects of the Gather Plan alternatives on wildfire risks in the Pancake Complex and reach a conclusion as to their significance."

12. On June 13, 2024, BLM initiated public scoping for the "Pancake Complex Herd Management Area Plan." With this announcement, the agency provided a "Management Evaluation Report." RAN provided substantive scoping comments through its attorneys on July 15, 2024. *See* PAN_04171-04182.

13. On October 30, 2024, BLM released a Preliminary Environmental Assessment (PEA) for the Pancake Complex Wild Gather & Herd Management Plan (NEPA# DOI-BLM-NV-L060-2024-0013-EA).

14. On November 27, 2024, RAN provided comments through its attorneys. *See* PAN-6087-6105. These submitted comments identified that the PEA (1) improperly conflated two independent actions - adoption of an HMAP and adoption of a gather plan; (2) produced an HMAP inconsistent with BLM's own policies; (3) relied on an HMAP and EA unsubstantiated by current data; (4) failed to identify the issues necessary to guide the HMAP's scope; (5) failed to consider reasonable alternatives; (6) failed to provide meaningful public participation; and (7) failed to comply with *Leigh v. Raby*'s order requiring reanalysis of the Gather Plan alternatives' foreseeable wildfire-risk effects. We further noted the PEA failed to address the majority of Plaintiffs' scoping comments. PAN_06087-06105.

15. On March 4, 2025, BLM released the Final EA (FEA) for the Pancake Complex Wild Gather & Herd Management Plan. On that same day, the agency issued a Decision Record and FONSI, adopting two proposed actions from the FEA.

16. The March 4, 2025, Decision Record adversely affects RAN's scientific interests, and its ability to use scientific evidence to advance its primary mission. For example, RAN's ability to support the scientific study of the Pancake Complex herds' range and the impact of climate on the range are impacted.

17. Had BLM conducted a comprehensive, on-site analysis of its proposed actions and alternative, the agency would have ensured scientific integrity related to the rare genetics of

the Pancake Complex horses and their native status. Past gathers in the Complex have removed several genetic lines of rare horses including Medicine Hat horses, Damale Curly horses, and Frame Overo Paint horses. The March 4, 2025, Decision Record adopts actions that will continue to improperly remove these genetic lines without adequate consideration, advancing the permanent extinction of rare genetic wild horse lineages.

18. In addition, the removal of these wild horses drastically depletes RAN's ability to use these horses' genetics to trace the genetic lineages of American wild horses at large. RAN believes that the United States, as a nation, was built on the back of a horse; to that end, an important aspect of American history is within the genetics of these horses. Some of that American history is now being lost forever.

19. Lastly, RAN also supports the exploration and enjoyment of wild horses through the arts and the use of the arts to advocate for the reintroduction and sustainment of the American wild horse. For example, RAW and 11 [HH] Art Gallery collaborated to bring about the exhibition "Harmonic Rewild" at SCOPE Miami Beach for the 2022 Art Basel Week event. From November 29 through December 4, 2022, approximately 76,000 visitors attended this immersive art experience. The intention of the art piece was to impart to the observers the need for rewilding and the beauty of wild horses and wild spaces.

20. The gathering and removal of wild horses in the Pancake Complex due to the challenged actions adversely affects the ability of RAN to use the arts to advance its mission. Through the disappearance of thousands of wild horses, and especially the rare wild horse lineages and types mentioned above, RAN's ability to use the beauty, power, and emotional impact of wild horses in art to advance CANA's mission has been stunted.

21. As a result of BLM's March 4, 2025, Decision Record adopting the HMAP/EA-FONSI, RAN has been forced to divert resources towards bringing public awareness to BLM's mismanagement and missteps. Had RAN not been forced to divert its staff's attention and time,

RAN would have been able to use those resources in its educational, scientific, and environmental activities, such as genetic research, support of wild horse academia, and the purchase and creation of sustainable wild lands in which wild horses can safely thrive.

22. On April 3, 2024, together with WHE, Tammi Adams, and Laura Leigh, RAN timely appealed Defendant's approval of the Gather EA to the United States Interior Board of Land Appeals and on May 1, 2025, petitioned for an order staying the decision.

23. On June 6, 2025, The United States Department of the Interior, Office of Hearings and Appeals, Interior Board of Land Appeals (IBLA) issued an Order to Show Cause. DOI-BLM-NV-L060-2024-0005-EA. The IBLA stated in its Order to Show Cause, that there was "no evidence Appellants filed their notice of appeal with the Bristlecone and Tonopah Field Offices[,]" and as such, ordered RAN and other appellants to show cause as to why the appeal should not be dismissed for lack of jurisdiction. *Id.* In the same Order, BLM's answer deadline was vacated. *Id.*

24. On June 13, 2025, RAN and the other IBLA appellants timely responded to the Court's June 6, 2025, Order to Show Cause. IBLA No. IBLA 2025-0202. DOI-BLM-NV-L060-0013-EA. We contended that our submission of the Notice of Appeal through the new Bison File and Serve (BFS) constituted timely filing. We requested relief through Federal Rule of Civil Procedure 60(b)(1) for mistake, inadvertence, surprise, or excusable neglect if it could not be seen as timely. Finally, we asked the Court to not dismiss our appeal.

25. On July 2, 2026, the IBLA dismissed our appeal and denied our petition to stay, citing a lack of jurisdiction to rule on it.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 22nd day of September 2026.

*/s/ Manda Kalimian*
Manda Kalimian