BRENT M. RESH
(Nevada Bar No. 14940)
BRENT RESH LAW, PLLC
2401 La Solana Way
Las Vegas, NV 89102
(702) 781-6903
brent@brentreshlaw.com

JESSICA L. BLOME
(California Bar No. 314898, pro hac vice)
J. RAE LOVKO
(California Bar No. 208855), pro hac vice)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
(510) 900-9502
jblome@greenfirelaw.com
rlovko@greenfirelaw.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| WILD HORSE EDUCATION, a non-profit corporation, LAURA LEIGH, individually and on behalf of WILD HORSE EDUCATION, TAMMI ADAMS, individually and on behalf of WILD HORSE EDUCATION, and REWILDING AMERICA NOW, a non-profit corporation,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR, BUREAU OF LAND MANAGEMENT, BILL GROFFY, Principal Deputy Director and Acting Director of the Bureau of Land Management, and JON RABY, Nevada State Director of the Bureau of Land Management,<br><br>Defendants. | CASE NO. 3:25-cv-00577-ART-CSD<br><br>**DECLARATION OF JESSICA L. BLOME** |

I, Jessica L. Blome, declare that if called as a witness in this action I would competently testify of my own personal knowledge, as follows:

1. I am an attorney with Greenfire Law, PC, and counsel for Plaintiffs in the above-titled action.

2. Attached hereto as **Exhibit A** is a true and correct copy of an excerpt from the U.S. Department of the Interior Handbook of National Environmental Policy Act Implementing Procedures, February 2026, Section 3.2, under Federal Rule of Evidence 201(b). I downloaded this excerpt from https://www.doi.gov/media/document/doi-handbook-nepa-procedures.

3. Attached hereto as **Exhibit B** is a true and correct copy of an email from opposing counsel to me dated July 16, 2026, wherein opposing counsel confirms that BLM did not consider documents referenced withing the 2008 Ely District Record of Decision and Approved Resource Management Plan when making its decision to reaffirm AML for the Pancake Complex HMAP. Exh. B, p. 2. BLM last considered whether to reaffirm the original AML for the HMAs that make up the Pancake Complex in the 2008 Ely District RMP, and if BLM had complied with the requirements of the Wild Horse Act, its implementing regulations, and the BLM Handbook, it would have consulted those documents when reaffirming AML in the Pancake Complex HMAP, rather than merely rubber-stamping it nearly 20 years later.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on the 22nd of September 2026,

*/s/ Jessica L. Blome*
JESSICA L. BLOME

# EXHIBIT A

# 516 DM 1 – U.S. Department of the Interior Handbook of National Environmental Policy Act Implementing Procedures

**February 2026**

Citations to this Handbook should be styled in the following format, using these specific citations as examples: DOI NEPA Handbook § 2.3(a)(3) or DOI NEPA Handbook Appendix § 2.

# TABLE OF CONTENTS

**PART 0—PURPOSE AND POLICY**
Section 0.1 Purpose and policy. 1
Section 0.2 Applicability. 1

**PART 1—NEPA AND AGENCY PLANNING**
Section 1.1 Determining when NEPA applies. 2
Section 1.2 Determine the appropriate level of NEPA review. 3
Section 1.3 NEPA and agency decision-making. 5
Section 1.4 Categorical exclusions. 6
Section 1.5 Environmental assessments. 7
Section 1.6 Findings of no significant impact. 10
Section 1.7 Lead and cooperating agencies. 10
Section 1.8 Notices of intent and scoping. 11

**PART 2—ENVIRONMENTAL IMPACT STATEMENTS**
Section 2.1 Preparation of environmental impact statements. 12
Section 2.2 Purpose and need. 13
Section 2.3 Analysis within the environmental impact statement. 13
Section 2.4 Page limits. 14
Section 2.5 Deadlines. 15
Section 2.6 Publication of the environmental impact statement. 16

**PART 3—EFFICIENT ENVIRONMENTAL REVIEWS**
Section 3.1 Reliance on existing environmental documents 16
Section 3.2. Programmatic environmental impact statements or environmental assessments and tiering. 17
Section 3.3 Publishing pre-decisional environmental documents. 19
Section 3.4 Combining documents. 19
Section 3.5 Incorporation by reference. 19
Section 3.6 Supplements to environmental impact statements. 19
Section 3.7 Integrity and completeness of information. 20
Section 3.8 Integrating NEPA with other environmental requirements. 20
Section 3.9 Elimination of duplication with State, Tribal, and local procedures. 20
Section 3.10 Proposals for regulations. 21
Section 3.11 Unique identification numbers. 21
Section 3.12 Emergencies. 21

**PART 4—AGENCY DECISION-MAKING**
Section 4.1 Decision documents. 21
Section 4.2 Filing requirements. 22

**PART 5—PROCEDURES FOR APPLICANT-PREPARED AND CONTRACTOR-PREPARED ENVIRONMENTAL IMPACT STATEMENTS AND ENVIRONMENTAL ASSESSMENTS AND OTHER ENVIRONMENTAL DOCUMENTS**


Section 5.1 Procedures for applicant-prepared environmental impact statements and environmental assessments. 22
Section 5.2 Using a bureau-directed contractor to prepare environmental documents. 22


**PART 6—DEFINITIONS**


Section 6.1 Definitions. 23


**PART 7—SEVERABILITY**


Section 7.1 Severability. 26


**APPENDIX 1 - IMPLEMENTATION GUIDANCE TO BUREAUS**


1. Scoping and Public Involvement 27
2. Categorical Exclusions (CE) and Extraordinary Circumstances Review Protocol 31
3. Using Existing NEPA Reviews 33
4. Analytical Elements Common to Environmental Assessments (EA) and Environmental Impact Statement (EIS) 37
5. Reasonably Foreseeable Effects of the Proposed Action and Any Action Alternatives. 41
6. Significance, including Reaching a Finding of No Significant Impact (FONSI) 42
7. Formal Aspects of Environmental Documents 44
8. Documenting Decisions 46
9. Applicant-Prepared and Contractor-Prepared EAs and EISs 47
10. Cooperating Agencies 50


**APPENDIX 2 - BUREAU CATEGORICAL EXCLUSIONS**


Office of Native Hawaiian Relations 54
U.S. Fish and Wildlife Service (Service) 54
U.S. Geological Survey (USGS) 57
Bureau of Indian Affairs (BIA) 59
Bureau of Land Management (BLM) 64
National Park Service (NPS) 85
Office of Surface Mining Reclamation and Enforcement (OSMRE) 90
Bureau of Reclamation (USBR) 92
Bureau of Ocean Energy Management (BOEM), Bureau of Safety and Environmental Enforcement (BSEE) 96
Categorical Exclusions Adopted from Other Agencies 99

the applicant, if any, pursuant to NEPA section 107(g)(2), 42 U.S.C. § 4336a(g)(2). After any such consultation, and for cause stated, the bureau may recommend a new deadline to the Office of the Deputy Secretary for review and approval. Cause for establishing a new deadline is only established if the environmental impact statement is so incomplete, at the time at which the bureau determines it is not able to meet the statutory deadline, that issuance pursuant to subsection (d) above would, in the bureau's view, result in an inadequate analysis. Any such new deadline must provide only so much additional time as is necessary to complete the environmental impact statement.

(f) *Certification Related to Deadlines.* When the environmental impact statement is published, the Responsible Official should certify (and the certification should be incorporated into the environmental impact statement) that the resulting environmental impact statement represents the bureau's good-faith effort to fulfill NEPA's requirements within the Congressional timeline; that such effort is substantially complete; and that, in the bureau's expert opinion, it has thoroughly considered the factors mandated by NEPA; and that, in the bureau's judgment, the analysis contained therein is adequate to inform and reasonably explain bureau's decision regarding the proposed Federal action.

**Section 2.6 Publication of the environmental impact statement.**

The Responsible Official should make the entire environmental impact statement available by publishing it on a public website and a notice in the Federal Register through the process managed by the Environmental Protection Agency (EPA), Federal Activities Division.

**PART 3—EFFICIENT ENVIRONMENTAL REVIEWS**

Section

3.1 Reliance on existing environmental documents
3.2 Programmatic environmental impact statements or environmental assessments and tiering.
3.3 Publishing pre-decisional documents.
3.4 Combining documents.
3.5 Incorporation by reference.
3.6 Supplemental environmental impact statements.
3.7 Integrity and completeness of information.
3.8 Integrating NEPA with other environmental requirements.
3.9 Elimination of duplication with State, Tribal, and local procedures.
3.10 Proposals for regulations.
3.11 Unique identification numbers.
3.12 Emergencies.

**Section 3.1 Reliance on existing environmental documents**

If a proposed action has been adequately evaluated in an earlier environmental impact statement or environmental assessment, the Responsible Official may prepare a Determination of NEPA Adequacy (DNA), memorandum to file, or other writing to document that a proposed action is adequately analyzed in an existing environmental impact statement or environmental assessment. Before using existing NEPA analysis, the Responsible Official should reevaluate the analysis to

ensure the analysis and assumptions to be relied upon remain valid, considering whether any new and substantial information or circumstances not previously analyzed may result in substantially different environmental effects. The Responsible Official should document this reevaluation including the basis for the determination that the existing analysis adequately assesses the environmental effects of the new proposed action, and the analysis and assumptions remain valid.

(a) Generally. The bureau may rely on an environmental impact statement, environmental assessment, or portion thereof, provided that the statement, assessment, or portion thereof meets the standards for an adequate statement or assessment under these procedures. When relying on an environmental impact statement, environmental assessment, or portion thereof, the bureau should cite the document, briefly describe the content and relevance to the environmental document, and may make modifications that are necessary to render the relied-upon document, or portion thereof, fit for fulfilling NEPA's analytic requirements for evaluating the environmental effects of the proposed action and reasonable alternatives.

(b) Substantial Similarity.

(1) If the actions covered by the original environmental impact statement or environmental assessment and the proposed action are substantially the same, the bureau may, and generally will, republish the relied-upon statement or assessment.

(2) If the previously analyzed and proposed actions are not substantially the same, the bureau may modify the statement or assessment as necessary to render the statement fit for fulfilling NEPA's analytic requirements for evaluating the environmental effects of the proposed action and reasonable alternatives, and publish the relied-upon statement or assessment, as modified. Where appropriate, the bureau may solicit comment to the extent that solicitation of comment would assist the bureau in expeditiously adapting the relied-upon statement or assessment so that it is fit for the bureau's purposes.

**Section 3.2. Programmatic environmental impact statements or environmental assessments and tiering.**

(a) Bureaus may prepare environmental documents for programmatic Federal actions, such as new agency programs. Bureaus may evaluate programmatic Federal actions in one of the following ways:

(1) Geographically, including actions occurring in the same general location, such as body of water, region, or metropolitan area.

(2) By type of action, including actions that have relevant similarities, such as common timing, effects, alternatives, methods of implementation, media, or subject matter.

(3) By stage of technological development.

(b) A Responsible Official may rely on analysis included in a programmatic environmental impact statement or programmatic environmental assessment for which judicial review was available to support a decision on a new proposed action as follows:

(1) If the bureau initiates NEPA review of a proposed action fewer than five years after a bureau has issued a programmatic environmental impact statement or environmental assessment, the Responsible Official may rely on the analysis in the programmatic

environmental impact statement or environmental assessment without additional NEPA review if the Responsible Official determines there are no substantial new circumstances or information about the significance of adverse effects that bear on the analysis.

(2) If the bureau initiates NEPA review on a new proposed action more than five years after an agency has issued a programmatic environmental impact statement or environmental assessment, the Responsible Official may rely on the analysis in the programmatic environmental impact statement or environmental assessment after evaluating it and verifying that reliance on the analysis remains valid. When conducting such an evaluation, the Responsible Official may rely on previously completed reviews, if any, of the programmatic environmental impact statement or environmental assessment.

(c) Where a bureau's existing environmental document is relevant to a later proposed action, a bureau may employ tiering, whereby the bureau uses existing analysis from broader environmental documents, including programmatic reviews, in subsequent narrower reviews.

(1) When a bureau prepares a subsequent environmental document that tiers to analysis from a programmatic review, the Responsible Official should first determine whether the existing analysis adequately covers the new proposed action. The tiered document should discuss the relationship between the tiered document and the previous review; summarize and incorporate by reference the issues discussed in the broader document; concentrate on the issues specific to the subsequent action, analyzing site-, phase-, or stage-specific conditions and reasonably foreseeable effects; and identify where the earlier document is publicly available.

(2) Tiering is appropriate when the sequence from an environmental impact statement or environmental assessment is:

(i) From a programmatic, plan, or policy environmental impact statement or environmental assessment to a program, plan, or policy statement or assessment of lesser or narrower scope or to a site-specific statement or assessment; or

(ii) From an environmental impact statement or environmental assessment prepared to support a specific action at an early stage to a subsequent environmental impact statement or environmental assessment prepared to support a specific action at a later stage.

(3) An environmental assessment may be prepared, and a finding of no significant impact reached, for a proposed action with significant effects, if the environmental assessment is tiered to an environmental impact statement that fully analyzes those significant effects. Tiering to a broader-scoped environmental impact statement may allow for the preparation of an environmental assessment and a finding of no significant impact for the individual proposed action, so long as any previously unanalyzed effects are not significant. A finding of no significant impact other than those already disclosed and analyzed in the environmental impact statement to which the environmental assessment is tiered may also

be called a "finding of no *new* significant impact" or a "finding of no *additional* significant impact."

**Section 3.3 Publishing pre-decisional environmental documents.**

During the process of preparing any environmental document provided for by these procedures, a bureau may publish such draft, pre-decisional materials as in the bureau's judgment may assist in fulfilling its responsibilities under NEPA and these procedures.

**Section 3.4 Combining documents.**

Bureaus should combine, to the fullest extent practicable, any environmental document or other NEPA compliance document with any other bureau document to reduce duplication and paperwork, ensuring that any findings or other required determinations are clearly identified and set forth. The page limits for environmental assessments and environmental impact statements apply to that portion of a jointly prepared Federal-state environmental compliance document that addresses NEPA compliance.

**Section 3.5 Incorporation by reference.**

(a) Bureaus may incorporate material, such as planning studies, analyses, or other relevant information, into environmental documents by reference when the effect will be to reduce the length of an environmental document without impeding bureau and public review of the action. When incorporating material by reference, the bureau will identify, briefly describe the content and relevance to the environmental document, cite (by specific page number where applicable), and make the materials reasonably available for review by potentially interested parties. Bureaus are encouraged to incorporate by reference wherever appropriate, including to reduce the length of environmental impact statements and environmental assessments.

(b) Though NEPA itself does not require cost-benefit analysis, other authorities may require a bureau to conduct such an analysis. To the extent that such cost-benefit analysis is relevant to any alternatives analysis a bureau is conducting pursuant to NEPA, the bureau should incorporate the cost-benefit analysis by reference or append it to the environmental document to avoid duplication in evaluating the environmental effects. In such cases, the environmental document should discuss the relationship between that analysis and any analyses of unquantified environmental effects, values, and amenities.

**Section 3.6 Supplements to environmental impact statements.**

(a) *When a supplement must be prepared*. A bureau should prepare supplements to environmental impact statements only if a major Federal action remains to occur, and:

(1) The bureau makes substantial changes to the proposed action that are relevant to environmental concerns; or

(2) The bureau determines, in its discretion, that there are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its effects.

(b) When preparing supplements, bureaus have discretion concerning how they facilitate public participation. A supplement need not be published or circulated in the same manner as the document being supplemented; rather, the Responsible Official may publish or circulate a supplement as appropriate to the scope of the supplement and the proposed action.

# EXHIBIT B

**From:** **Ballard, Bonnie M. (ENRD)** Bonnie.M.Ballard@usdoj.gov
**Subject:** RE: [EXTERNAL] Administrative Record Deficiencies
**Date:** July 16, 2026 at 2:07 PM
**To:** Sasha Porshnikoff aporshnikoff@greenfirelaw.com, Herman, Brian (ENRD) Brian.Herman@usdoj.gov
**Cc:** Jessica Blome jblome@greenfirelaw.com, Lily Rivo lrivo@greenfirelaw.com

BB

Good afternoon,

Defendants have reviewed Plaintiffs' letter regarding the contents of the administrative record and have provided responses for each of the four categories of requests outlined in the letter below:

BLM make the following **corrections** to the Administrative Record. The files noted below contain errors such as illegible pages, missing or incorrect Bates numbering:

- 19861231.Smith 1986 Eq Vet Sci_Competition betn feral horses and other grazers.pdf: The text is cut off toward the spine on PAN_07486. Please re-scan so that it is legible.
  - Defendants do not have different copy of this document
- 20221231.Grams et al 2022 Wildl Res_WH growth rates after PZP-22.pdf.pdf: Page 1 is not stamped (should be PAN_14672).
  - Can provide corrected version
- 20171231.Joone et al 2017 Theriogenology_AMH dynamics PZP or GnRH vax.pdf.pdf: Should contain reported numbers: 13305-13331. Actual: 13314-13340.
  - This is due to an issue with the index, we will provide a corrected index
- 20171231.Joone et al 2017 Theriog_Ovarian dysfunction and PZP vaccines.pdf.pdf: Should contain reported numbers: 13332-13340. Actual: 13305-13313
  - This is due to an issue with the index, we will provide a corrected index
- DaviesBoyd2019Ecological_Effects_of_Free-Roaming_Horses_in_North.pdf: Should contain reported numbers: 16325-16333. Actual: 16333-16341
  - This is due to an issue with the index, we will provide a corrected index
- Davies_et_el 2010 Effects of long term livestock grazing.pdf: Should contain reported numbers: 16334, 16341. Actual: 16325-16332
  - This is due to an issue with the index, we will provide a corrected index

BLM **provide full-text articles** for the following records. The files noted below only contain abstracts for the references:

- 19751231.Hart 1975 Horm and Behav_abs_Castration_sexual behav_goat.pdf.pdf
  - Can provide full article
- 20131231.Baker et al 2013 J Zoo Wildl Med GonaCon in female horses at TR.pdf.pdf
  - Defendants only have the abstract of this article
- 20131231.Powers et al 2013 J Zoo Wildl Med GonaCon in elk.pdf
  - Defendants only have the abstract of this article
- 20151231.Freeman and Lyle 2015 Eq Vet Ed_Colic in a mare IUD marbles.pdf.pdf
  - Can provide full article

In addition, please provide the following documents referenced within the March 2025 Pancake Complex Wild Horse Gather & Herd Management Plan Final Environmental Assessment (DOI-BLM-NV-L060-2024-0013-EA):

- Swanson, S. R. In Press. Grazing Management for Livestock, Free-Roaming Horses and Burros, and Resilience. Human Wildlife Interactions.

  - Can provide document
- “BLM IM 2009-062 Wild Horse and Burro Genetic Baseline Sampling” as referenced in BLM response to Public Comment No. 27, pdf. p. 311.
  - Can provide document
- Consent Decision signed by Administrative Law Judge David Torbet on May 11, 1992, through the Department of Interior Office of Hearings and Appeals, Hearings Division
  - Can provide document
- 1996 Final Multiple Use Decision
  - There is no cite to a 1996 final multiple use decision anywhere in the EA. To the extent you are referring to the 1995 use decisions, these are already included in the record.
- Summary documents containing a data-based analysis and determination of AML
  - These are outside the scope of the challenged decision and therefore not included in the administrative record.
- 2022 – 2025 Census flights for HMAs
  - Can provide memos re: census flights for 2023 and 2025

Regarding the fourth category of requested documents (documents “referenced within the included August 2008 Ely District Record of Decision and Approved Resource Management Plan”), BLM did not consider these documents in making its decision for the challenged action in this case, so they are not properly part of the administrative record. See Save the Colorado v. United States Dep't of the Interior, 517 F. Supp. 3d 890, 899 (D. Ariz. 2021) (“[D]ocuments merely referenced or cited in another document in the administrative record, without clear evidence that these were considered by the agency, cannot be supplemented to the administrative record.”).

Please let us know if you have any questions or would like to discuss further on a call.

Thank you,
-Bonnie

Bonnie Ballard
Trial Attorney
U.S. Department of Justice | Environment & Natural Resources Division
Wildlife & Marine Resources Section
(202) 532-5567

---

**From:** Sasha Porshnikoff <aporshnikoff@greenfirelaw.com>
**Sent:** Friday, July 10, 2026 2:34 PM
**To:** Ballard, Bonnie M. (ENRD) <Bonnie.M.Ballard@usdoj.gov>; Herman, Brian (ENRD) <Brian.Herman@usdoj.gov>
**Cc:** Jessica Blome <jblome@greenfirelaw.com>; Lily Rivo <lrivo@greenfirelaw.com>
**Subject:** [EXTERNAL] Administrative Record Deficiencies

Dear Ms. Ballard and Mr. Herman,

Please see the attached letter addressing the administrative record issues. Please let me know if you have any questions.

Sincerely,
Alexandra Porshnikoff

Alexandra "Sasha" Porshnikoff
Law Clerk
**Greenfire Law, PC**
2748 Adeline Street, Suite A
Berkeley, CA 94703
Office: 510.900.9502 x 719
aporshnikoff@greenfirelaw.com

PRIVILEGE AND CONFIDENTIALITY NOTICE
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact me immediately by return e-mail or at 510-900-9502 x 2, and destroy the original transmission and its attachments without reading or saving in any manner.